UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ASWIN SUBRAMANIAM KRISHNAN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HOMELAND SECURITY, <br><br> Defendant. | Case No. 3:24-CV-481-CCB-SJF |

## OPINION AND ORDER

Before the Court is Defendant Department of Homeland Security's ("DHS") Motion to Dismiss Plaintiffs' Complaint. (ECF 10). Plaintiffs here are nineteen foreign nationals who formerly held F-1 student visas. (ECF 1 ¶¶ 1–20). Each plaintiff was determined inadmissible to the United States by DHS. (ECF 1 at 1). In their complaint, they raised three claims under the Administrative Procedure Act ("APA"): (1) DHS incorrectly interpreted federal immigration law, (2) DHS's determinations that each plaintiff was inadmissible were arbitrary, capricious, and unlawful; and (3) DHS's decision process was procedurally deficient and irregular. (ECF 1 ¶¶ 172–207). DHS asks the Court to dismiss the entire complaint. For the reasons below, the Court **GRANTS** DHS's motion to dismiss and **DISMISSES** this case.

**I.    RELEVANT BACKGROUND**

The Court begins by summarizing the allegations in the Complaint. (ECF 1). Plaintiffs are nineteen foreign nationals who obtained F-1 student visas to study in the

United States. Generally, F-1 visa holders must exit the United States at the end of their educational program. An F-1 student may, however, extend her stay after graduation by participating in a practical training program directly related to her course of study. Plaintiffs took advantage of this opportunity by joining the Operational Practical Training program ("OPT"). As required by the program, Plaintiffs sought and secured offers of employment from information technology staffing companies ("the OPT Companies"). The OPT Companies were verified as OPT employers by the United States Citizenship and Immigration Services. These companies promised to provide Plaintiffs with training services, networking opportunities, and internships. Before beginning work, however, the OPT Companies required Plaintiffs to receive additional training. This training was provided by the OPT Companies in exchange for a fee.

Believing the OPT Companies to be legitimate employers, Plaintiffs paid the fee and participated in the training. But after Plaintiffs completed the training, the OPT Companies did not follow through on their promises to market Plaintiffs to employers and help them secure internships. As DHS later discovered, the OPT Companies were illegitimate companies perpetrating a fraud on the United States and foreign students. Because Plaintiffs contracted with the OPT Companies, DHS treated them as knowing co-conspirators and sanctioned them with inadmissibility determinations that barred all Plaintiffs from admission to the United States. But DHS did not notify Plaintiffs of these sanctions. Nor did it provide Plaintiffs an opportunity to defend themselves or contest their inadmissibility. Instead, DHS entered the inadmissibility determinations in databases accessible by DHS and the Department of State. Plaintiffs only became aware

of these determinations when the Department of State informed them of their inadmissible status. In this suit, they seek vacatur of DHS's interpretation of the definition of fraud in 8 U.S.C. § 1182(a)(6)(C)(i) as applied to their inadmissibility determinations, vacatur of their inadmissibility determinations, an injunction barring DHS from adjudicating Plaintiffs inadmissible based on its interpretation of 8 U.S.C. § 1182(a)(6)(C)(i), and orders directing DHS to provide Plaintiffs with an opportunity to be heard on their inadmissibility determinations and reinstating Plaintiffs' lawful status in the United States. They also seek fees under the Equal Access to Justice Act.

## II.   ANALYSIS

DHS argues that (1) Plaintiffs are improperly joined, (2) they have not demonstrated Article III justiciability, and (3) they fail to state a claim upon which relief may be granted. (ECF 12 at 1–2).

### a.   Severance and Dismissal for Improper Joinder

DHS first asks the Court to sever and dismiss or transfer all plaintiffs except Plaintiff Krishnan. In support, it argues that the facts underlying each plaintiff's claim are too diffuse to constitute the same "series of transactions or occurrences" required by FRCP 20 for proper joinder. Fed. R. Civ. P. 20(a). It points out that the complaint contains no common timeframe within which these events occurred, and notes that Plaintiffs do not allege that they worked for the same company, attended the same school, or were found inadmissible under similar circumstances. Plaintiffs respond that their suit does not attack the substance of any single inadmissibility decision but rather objects that DHS denied all plaintiffs due process. Accordingly, Plaintiffs argue that

3

they need only allege the same due process violation by DHS to satisfy the requirements of Rule 20 joinder.

This Court has significant discretion to determine whether Rule 20 joinder is proper. *See Cont'l Indem. Co. v. BII, Inc.*, 104 F.4th 630, 645 (7th Cir. 2024) ("As for permissive joinder, under Rule 20, district courts have discretion, with considerable flexibility in managing and structuring civil litigation for fair and efficient resolution of complex disputes."). Plaintiffs have alleged that DHS's procedure in each of their inadmissibility determinations violated due process. Those violations are the "series of transactions or occurrences" on which they base their argument for joinder. These alleged procedural violations are sufficient to permit joinder under the permissive standard of Rule 20. *See Dubey v. United States Dep't of Homeland Sec.*, 2025 WL 371780, at *3 (N.D. Ill. Feb. 3, 2025). The Court will not sever and dismiss all plaintiffs besides Plaintiff Krishnan for improper joinder.

### b. Article III Justiciability

DHS next asks the Court to dismiss the complaint due to lack of Article III justiciability. In support, DHS raises four arguments: (1) six plaintiffs departed the United States without alleging an intention to return, rendering their injury speculative; (2) five plaintiffs have been admitted to the United States notwithstanding their alleged inadmissibility determination, rendering their claims moot; (3) five plaintiffs were denied visas by State Department consular officers, rendering their inadmissibility unreviewable and therefore not redressable by this Court; and (4) the remaining plaintiffs are currently within the United States, negating any claim of injury in fact. The

4

Court will first address the question of injury in fact, second the question of redressability, and last the question of mootness.

      i. *Injury in Fact*

To establish standing under Article III, a plaintiff must show that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). An injury in fact must be a "concrete and particularized, actual or imminent invasion of a legally protected interest." *Id.* at 555. The Seventh Circuit has recognized that the loss of opportunity to become a permanent resident may be an injury in fact for Article III standing purposes. *Musunuru v. Lynch*, 831 F.3d 880, 882 n.1 (7th Cir. 2016) (citing *Patel v. U.S. Citizenship & Immigr. Servs.*, 725 F.3d 633, 637–38 (6th Cir. 2013), and *Kurapati v. U.S. Bureau of Citizenship & Immigr. Servs.*, 775 F.3d 1255, 1259–60 (11th Cir. 2014), for the proposition that loss of opportunity to become a permanent resident is an injury in fact fairly traceable to the agency that removed the opportunity). Such an injury is redressable for standing purposes when a favorable decision by the court would "remove the obstacle" to a favorable immigration decision, even if the applicant might receive an unfavorable decision on other grounds. *Matushkina v. Nielsen*, 877 F.3d 289, 294 (7th Cir. 2017). Inadmissibility determinations can create an injury in fact when a plaintiff has an "interest in her admissibility to the United States" and that interest is injured by the inadmissibility determination, even if the plaintiff "has no right of entry to the United States, and no cause of action to press in furtherance" of her claim. *Id.* at 293. But an

5

inadmissibility decision will only create an injury in fact if it results in some adverse consequence for the plaintiff. *See id.* at 295 (determining that an inadmissibility determination created standing because it was the basis for an unfavorable visa determination).

DHS entered inadmissibility determinations for the six plaintiffs who departed the United States and the remaining plaintiffs who are currently within the United States. The agency argues that the six plaintiffs who departed the United States have not been injured in fact because they have not alleged any specific plans to return. Citing *Lujan*, it points out that frustrated intentions to travel "some day" are not an injury in fact. 504 U.S. at 564. But these plaintiffs do not claim injury due to disruption of speculative travel plans. They claim injury because the inadmissibility determinations have altered their legal status. Though these plaintiffs do not allege a specific plan to return, they do allege that the inadmissibility determinations have stripped them of the opportunity to acquire a visa or become a permanent resident. This loss of opportunity for permanent residency is an adverse consequence of the inadmissibility determination and thus constitutes an injury in fact. Therefore, the six plaintiffs who have left the United States have alleged injuries in fact.[1]

---

[1] Plaintiffs also contend in their brief that these six plaintiffs became aware that DHS determined them inadmissible when they were applying for a visa at the consulate. This allegation, however, does not seem to appear in the complaint. Plaintiffs do generally allege at paragraph 165 that "[a]t the consulate Plaintiffs where informed that the only avenue to future admission is to request a nonimmigrant waiver of inadmissibility prior to getting a visa from the US consulate." (ECF 1 ¶ 165). But this does not specify which plaintiffs were at the consulate, nor does it allege they were applying for visas to return. Accordingly, the Court will treat Plaintiffs' contention in their brief as a new allegation and will not consider it part of the complaint for purposes of this motion.

The plaintiffs who remain within the United States pose a more complex standing problem. DHS argues that these plaintiffs also lack standing because they have not pled an injury in fact. In support, DHS reasons that as these plaintiffs are within the United States currently, they cannot claim to be injured by the inadmissibility determination. While these plaintiffs acknowledge that they are currently within the United States, they contend that the fraud finding made by DHS will result in denial of reentry should they leave the country.

These plaintiffs do not allege a specific intent to leave and reenter the country. But like the six plaintiffs outside the United States, the inadmissibility determination has deprived them of the opportunity to seek permanent residency. DHS focuses on these plaintiffs' assertion that they fear leaving the United States, arguing that they have not alleged sufficient facts to support this claim. Without such plans, DHS contends, these plaintiffs cannot plausibly allege that they have suffered an injury in fact. But Plaintiffs assert that their status as inadmissible is an injury itself, even without plans to leave the country. In their complaint, Plaintiffs allege that waivers of inadmissibility are effectively unavailable to them, and that even if they secured such a waiver, it would not permit them to become permanent residents. ECF 1 at ¶¶ 165–67.

Article III standing doctrine requires plaintiffs to "answer a basic question: 'What's it to you?'" *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 379 (2024) (internal quotations omitted). Standing ensures plaintiffs are not "mere bystander[s], but instead . . . have a personal stake in the dispute." *Id.* (internal quotations omitted). DHS frames these plaintiffs as lacking a personal stake in this dispute because they are

7

currently within the United States. But Plaintiffs' interest is not in their *admission* to the United States; they are already here. Instead, their stake is in their *admissibility*. As inadmissible foreign nationals, they allege that they have lost the opportunity to secure future visas or attain permanent residency. Whether or not they have the right to admissibility, they have an interest in it. And that interest "need not rise to the level of a right, let alone a constitutional right," for them to have standing because "such a right is not a prerequisite to standing in the case of someone seeking entry to the United States." *Matushkina*, 877 F.3d at 293.

As the Seventh Circuit has recognized, "[t]he line between a lack of standing and a failure to state a claim for relief on the merits can be a fine one." *Id.* at 292. The difference here is the focus of the inquiry. Standing requires that the Court consider whether these plaintiffs have pled facts sufficient to support their claim of an injury in fact caused by the defendant and redressable by this Court, not whether they have pled facts sufficient to support a route to legal relief for that injury. Because these plaintiffs have alleged that DHS's determination of inadmissibility creates a lasting bar to permanent residency, and their current residence within the United States establishes their interest in such lawful status, they have pled an injury in fact. Whether they have pled facts sufficient to support a claim to relief is a distinct question that the Court addresses below.

  ii. *Redressability*

DHS argues that those plaintiffs denied visas by consular officials lack standing because this Court cannot review consular decisions and thus cannot redress the

8

plaintiffs' injuries. This misstates the nature of Plaintiffs' claims. Plaintiffs are not challenging the visa denials. Though visa denial is a component of the injury these plaintiffs allege, they purport to challenge DHS's inadmissibility determinations, not the visa denials. The Seventh Circuit addressed a similar issue in *Matsushkina*. In that case, the plaintiff sought to challenge a Customs and Border Patrol inadmissibility determination that led to the cancellation of her visa and the denial of a new visa. *Matushkina*, 877 F.3d at 291. The Seventh Circuit held that the plaintiff had established redressability because if she prevailed on the merits, she might be able to "remove the obstacle" to her visa application. *Id.* at 294. Though the panel ultimately determined that consular nonreviewability defeated her attempt to state a claim, *see id.* at 294–95, she did not have a problem with redressability. Neither do these plaintiffs.

    *iii. Mootness*

DHS argues that the claims of five plaintiffs are moot because those plaintiffs are either in the United States on an H-1B visa without a waiver of inadmissibility,[2] in the United States on an H-1B visa with a waiver of inadmissibility, or out of the United States but currently being considered for a waiver of inadmissibility. Once again, though, the core of Plaintiffs' claim is not that they have been denied visas but that they have been determined inadmissible. DHS argues that these plaintiffs already received the relief they seek here when they were given a chance to be heard over the matter of

---

[2] The parties dispute Plaintiff Lekha Naresh Warke's visa status. Plaintiffs assert that she was admitted on an H-1B visa with a waiver after a finding of inadmissibility. DHS believes she was admitted without a waiver. Both parties agree that she was admitted on an H-1B visa.

9

their visa waivers. This argument fails. Temporary waivers of inadmissibility for visa purposes do not moot Plaintiffs' claims because those actions do not reach the inadmissibility determinations at the core of Plaintiffs' suit.

### c. Failure to State a Claim

Finally, DHS asks the Court to dismiss the complaint because it fails to state a claim upon which relief may be granted as required by FRCP 12(b)(6). Fed. R. Civ. P. 12. In support, it argues that the complaint contains insufficient factual allegations to support Plaintiffs' claims, bases its allegations on a non-binding policy manual, and raises claims that are barred by principles of nonreviewability.

To survive a motion to dismiss under FRCP 12(b)(6), "a complaint must contain 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)); *accord McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2013) (noting that a complaint "must contain 'allegations plausibly suggesting (not merely consistent with)' an entitlement to relief"). A complaint therefore fails to state a claim if it does not "describe the claim in sufficient detail to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests [or] plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (internal quotations omitted).

First, DHS contends that the complaint is based on the conclusory allegation that DHS marked Plaintiffs as inadmissible without notice or an opportunity to be heard. In

10

support, DHS argues that Plaintiffs allege no facts to explain how they found out about the inadmissibility determination, or which agency within DHS determined them inadmissible, or how DHS's inadmissibility determinations violated its own procedures. In response, Plaintiffs point to their allegations that they were victimized by fraudulent OPT companies and that DHS reviewed their admissibility, determined they were inadmissible based on a finding of fraud, and did not provide them with a written decision or a chance to respond.

    This argument fails. "Plausibility does not mean probability" at the pleading stage. *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 833 (7th Cir. 2015). Plaintiffs have presented a plausible account of the facts. According to the complaint, the fraudulent OPT Companies targeted Plaintiffs with their paid training scheme, and Plaintiffs fell for it. DHS uncovered this scheme, and based on Plaintiffs' association with the OPT Companies, found that Plaintiffs were engaged in fraud or misrepresentation. DHS determined Plaintiffs inadmissible on that basis and entered that inadmissibility determination into a government database. Plaintiffs did not receive a written decision or an opportunity to contest this finding. Instead, they were later informed of their inadmissible status by the State Department. These facts are enough to make Plaintiffs' complaint more than conclusory. Plaintiffs did "not have to recite every detail related to their allegation. They just ha[d] to include enough facts to present a story that holds together." *Roldan v. Stroud*, 52 F.4th 335, 339 (7th Cir. 2022). They did so here.

Second, DHS contends that Plaintiffs' claim is based on the procedure detailed in a non-binding United States Citizenship and Immigration Services ("USCIS") policy manual and thus must fail as a matter of law. In support, DHS argues that the USCIS policy manual does not bind DHS as a whole. Because Plaintiffs did not allege that USCIS adjudicated them inadmissible, DHS argues that a departure from the procedure described in the USCIS manual does not offer Plaintiffs a path to relief. And DHS argues that the policy manual itself states that it does not create any procedural right and cites a string of cases holding that the USCIS manual is not binding. Plaintiffs respond by arguing that USCIS's failure to follow its own rules should be attributed to DHS at large.

DHS's point is simple. Plaintiffs allege that DHS entered inadmissibility determinations against them. They do not allege that USCIS entered those determinations. Because USCIS is a subagency of DHS, DHS argues, USCIS's internal policy manual cannot be treated as binding on all of DHS. Thus, even if USCIS's policy manual bound USCIS, Plaintiffs cannot effectively argue that a breach of that policy by DHS constitutes a breach of procedure sufficient for this Court to grant relief. And DHS cites a string of nonbinding but persuasive case law suggesting that the USCIS policy manual is not even binding on USCIS, let alone the whole of DHS. *See, e.g.*, *Diaz v. U.S. Citizenship and Immigr. Servs.*, 499 F. App'x 853, 856 (11th Cir. 2012) (unpublished) (finding that USCIS Field Adjudicator Manual lacks the force of law); *Viswanadha v. Mayorkas*, 660 F. Supp. 3d 759, 774 (N.D. Ind. 2023) (finding that USCIS policy manual clarifies preexisting rules but does not create new duties). Plaintiffs attempt to

12

distinguish *Diaz*, pointing out that *Diaz* involved a claim of insufficient process, but this case involves a claim of no process. But the *Diaz* court stated quite clearly that "nothing . . . support[s] the implicit suggestion that [the USCIS Adjudicator's Field Manual] has the force of law, such that it may support a due process claim." 499 F. App'x at 856. This runs directly counter to Plaintiffs' argument. Though *Diaz* does not bind this Court, its reasoning is persuasive. Plaintiffs have not pled facts sufficient to plausibly support a claim for relief based on DHS's divergence from the USCIS procedure outlined in the USCIS policy manual.

Third, DHS argues that principles of nonreviewability extend beyond consular decisions and shield DHS from review because Plaintiffs' challenge to DHS's inadmissibility decisions is an attempt to influence future decisions on Plaintiffs' entitlement to a visa. Though traditional consular nonreviewability only shields "visa decisions made by consular officers abroad" from judicial review, *Pak v. Biden*, 91 F.4th 896, 900 (7th Cir. 2024), the Seventh Circuit has extended that protection to "indirect attacks" on visa decisions where plaintiffs challenge the underlying decisions that led to their visa denial, *Matushkina*, 877 F.3d at 295. More recently, the Seventh Circuit has warned against treating "consular nonreviewability" as if it only applies to "decisions by the Department of State at consulates outside our borders." *Dubey v. Department of Homeland Security*, 154 F.4th 534, 538 (7th Cir. 2025).

Here, DHS urges the Court to extend those principles of nonreviewability to any decision that might "influence any future decision on [Plaintiffs'] entitlement to a visa." (ECF 12 at 31). Though the Court recognizes that litigants may not "avoid the doctrine

13

of consular nonreviewability" by challenging the inadmissibility determination that led to a visa denial, *Matushkina*, 877 F.3d at 295, extending nonreviewability to any decision that might influence a future visa decision takes it too far. Principles of nonreviewability do not bar this Court from reviewing inadmissibility determinations simply because a visa decision may later be based on those determinations.

### d.  APA Challenges to Antecedent Findings

The Seventh Circuit's recent decision in *Dubey v. Department of Homeland Security* sheds additional light on this case. 154 F.4th 534 (7th Cir. 2025). This decision was issued after DHS's motion to dismiss was fully briefed, but both parties have submitted supplemental briefing on how *Dubey* applies to this matter. In *Dubey*, as here, the plaintiffs challenged DHS's determination that they were inadmissible to the United States because of a fraud finding deriving from their participation in the OPT program and their relationship with fraudulent companies. The district court dismissed the suit, noting that "'the initial determination that [the plaintiffs] were inadmissible' amounts to an order of removal." *Dubey*, 2025 WL 371780, at *6 (quoting *Odei v. Dep't of Homeland Sec.*, 937 F.3d 1092 (7th Cir. 2019)). Because 8 U.S.C. § 1252(a)(2)(A)(i) bars judicial review of most removal orders, the district court reasoned that it also precluded review of the *Dubey* plaintiffs' inadmissibility determinations. *See id.*

The plaintiffs appealed the dismissal, arguing they challenged not the removal order but the "antecedent findings that they misused the 'optional practical training' program." *Dubey*, 154 F.4th at 536. The Seventh Circuit rejected that argument, reasoning that every removal order has a justification, so permitting a challenge to the

14

antecedent findings would amount to permitting a challenge to the removal order. *See id.* More relevant here, the panel also concluded that as "administrative findings about plaintiffs' 'optional practical training' were not the terminal events in their situations," those findings were unreviewable under the APA. *Id.* at 537. The APA only authorizes review of final administrative actions, and it expressly refuses to authorize judicial review that other statutes foreclose. *See id.* The panel reasoned that as "[n]either the court of appeals nor a district court can review an expedited order of removal . . . , neither court can review an administrative finding that underlies the order." *Id.* In short, federal district courts lack jurisdiction to review expedited orders of removal or the antecedent findings that underly those orders.

Plaintiffs argue that the reasoning of *Dubey* should not apply because 8 U.S.C. § 1252(a)(2)(A) only strips federal courts of jurisdiction to review removal orders. But though the statute at issue in *Dubey* does not apply to this case, the logic behind the decision does. In *Dubey*, plaintiffs raised an APA challenge to antecedent findings of OPT program fraud that led to expedited removal orders. The Seventh Circuit determined that those antecedent findings could not be challenged under the APA for two reasons: first, because they led to an expedited removal order that itself was unchallengeable, and second, because they were not final administrative actions subject to review under the APA. In this case, there seem to be two classes of plaintiffs: those who have been determined inadmissible and received an unfavorable visa outcome for that reason, and those who have been determined inadmissible but have not received

15

an adverse visa decision.[3] The first class of plaintiffs may not mount an APA challenge because, like the plaintiffs in *Dubey*, their claim effectively challenges an adverse visa decision. Visa decisions are generally unreviewable by this Court. *See Matushkina*, 877 F.3d at 294. Thus, if an antecedent determination led to an adverse visa decision, principles of nonreviewability bar this Court from reviewing those antecedent determinations. *See id.* at 295.

The second class of plaintiffs falls within the second line of reasoning applied in *Dubey*. For an agency action to be final and thus challengeable under the APA, it must represent the "consummation" of an agency's decisionmaking process, and it must "determine rights or obligations." *Army Corps of Engineers v. Hawkes Co.*, 578 U.S. 590, 597 (2016). Based on Plaintiffs' briefing it seems that at least some plaintiffs have received favorable visa decisions since the inadmissibility determination was entered and this lawsuit was filed. (*See* ECF 19 at 3 ("All but two of Plaintiffs are lawfully in the United States at this time . . . .")). So DHS's antecedent findings of fraud do not appear to be the "consummation" of the agency's decisionmaking, as they have not actually barred Plaintiffs from legal entry on a visa. And though Plaintiffs allege that the inadmissibility determinations bar them from permanent residency, there is no allegation that any plaintiff has sought permanent residency and been denied due to the inadmissibility determination. The Court is not convinced, therefore, that the

---

[3] It is unclear from the briefing and the complaint how many plaintiffs have been denied a visa based on the determination of inadmissibility. The motion to dismiss briefing suggests that at least six plaintiffs were turned away at the consulate, but Plaintiffs' supplemental briefing states that all but two plaintiffs are now legally within the United States. (ECF 13 at 12; ECF 19 at 3).

16

inadmissibility determinations have consummated the agency's decisionmaking and determined the rights or obligations of Plaintiffs in a way that would constitute a final agency action. Accordingly, this Court lacks jurisdiction to hear this case under the APA.

### III. CONCLUSION

For the reasons discussed above, the procedure outlined in a USCIS policy manual cannot by itself support a claim that DHS violated Plaintiffs' procedural rights. But the Court need not determine whether Plaintiffs can maintain their suit without relying on the policy manual. The APA only permits challenges to final agency actions. The inadmissibility determinations at issue here are not final agency actions. Thus, this Court lacks the jurisdiction to hear this case. DHS's motion to dismiss (ECF 10) is **GRANTED**. This case is **DISMISSED.**

SO ORDERED on January 14, 2026.

　　　　　　　　　　　　　　　　　　　　/s/ *Cristal C. Brisco*
　　　　　　　　　　　　　　　　　　　　CRISTAL C. BRISCO, JUDGE
　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT COURT